Whenever you're ready, Ms. Hughes. Thank you, Judge Jones. And good morning. May it please the court. Hope Hughes on behalf of the appellant, Brittany Gio, on behalf of the minor child, T.A.G. Your Honors, this case stems from the death of Blake Powell while incarcerated at the Ouachita Correctional Center from November 9th of 2019 to March 13th of 2020. Now, on March 13th, 2020, Mr. Powell took his life by suicide. We allege that that was due to the failure of the appellees to provide adequate medical care while he was in their care in custody. The trial court dismissed all of plaintiff's claims, both the 42 U.S.C. 1983 claims as well as the state law negligence claims, which I submit to this court as an error. And I would like to focus on two main things today that I believe the trial court overlooked and changes the ruling entirely. The first pertains to plaintiff's negligence claims. I do believe pertinent to the negligence discussion is the history of Mr. Powell as it relates to his mental health while he was incarcerated. So, when he was taken into custody on November 9th of 2019 due to an attempted burglary, he had asked the victims of his act and they placed him on suicide watch where he remained for five days until he was released by the jail's mental health professional. Fast forward to January 23rd of 2020, Mr. Powell reports to a deputy that he is suicidal. He tells them very plainly they put him on suicide watch where he again remains for five days until the mental health professional, Dr. David Boyle, clears him from suicide watch, determining that he's no longer a risk to himself. So, you're principally placing your argument on state law negligence? That's correct, Your Honor. Well, to help us out, what's your best case for state law negligence? Well, Judge, I will say there's, I like to reference the Jacobs v. West Feliciana Sheriff's Department and I understand that that is a deliberate indifference in a 1983 case, but the court goes into a discussion about how knowledge of past acts of suicide is relevant to the analysis and the trial, the analysis of knowledge, and the trial court did not consider knowledge of past acts when it determined, what the trial court did was it looked at March 13th of 2020, that's the date Mr. Powell took his life, and it said the deputies, it was not reasonably foreseeable that Mr. Powell would harm himself and they determined that the deputies had all submitted affidavits, the ones that encountered him on that date, and said he didn't meet any of the criteria that would cause them to think he was at risk for suicide. My argument is that you can't exclude, you can't not look at February 18th of 2020 when Mr. Powell exhibits 13 signs that are noted and documented in his records that he was a risk for suicide. It sounds as though you're saying that he should have been kept continuously or permanently on suicide watch. Judge Smith, respectfully, that has not been a claim that I have ever argued in any briefs or in our complaint. The argument is that on February 18th when he should have been put on suicide watch and that is not only pursuant to the jail's suicide prevention and intervention policy, there was also a medical recommendation by the nurse, Sergeant George. He's a nurse, but he's also a deputy. He saw him and he said the record evidence is that he needed to be placed on suicide watch and he needed to be seen by a mental health professional. That was never done. Then we go to March 3rd where there's documented psychotic and delusional behavior on the part of Mr. Powell. Sergeant George, the nurse, again says- The reason was that he had been raped and that's a far cry from suicide. That is correct, Your Honor, but the Sergeant George said he needed to be seen by a mental health professional and put on suicide watch. That was his medical recommendation based on his training as a nurse and based on the training that they received within the jail and the suicide prevention and intervention policies. Again, deputies did not follow those orders. The testimony by the deputies during their depositions was that, so you've got two separate You've got the security at the jail and you've got the medical at the jail. The nurses are medical, but they don't actually take the inmate and put them on suicide watch. They report to security that this inmate needs to be put on suicide watch and it is up to security personnel to get him there. They failed to do that. The trial court completely disregarded the February 18th events, the March 3rd events for which medical recommendations were made that he be provided mental health care. None of that was done and the court just completely disregarded that and said there's no foreseeability that Mr. Powell would have committed suicide, but I don't know how you separate these instances out. If you have an inmate who is suicidal, asking for help, needs mental health care that's recommended by medical personnel and then it never happens, at the end of the day, we're here on a summary judgment, right, and so it was the appellee's responsibility at the trial court level and their burden to negate an essential element of my claim, which means they would have had to produce some sort of evidence, medical testimony, saying there is no connectivity between February 18th, March 3rd, and March 13th and they don't have . . . Let's get to a kind of a procedural issue and I realize you may have more to say about what you say are the facts, but so the district court in the order granting summary judgment said both Russell and Johnson have been sued only in their official capacities. I don't find anywhere in your opening brief on appeal that you've responded to or taken an issue with that, so do you acknowledge that they were not sued, that they were sued only in their official capacities? No, Judge Smith. I do disagree with that and I can point the court if you were to go to the complaint at paragraphs 18, 22, 24, 28, 30, I have asserted that the warden and actually paragraph 17 references the sheriff as parish employees acting under the color of state law through their failures to train, supervise, implement proper policies, deprive Mr. Powell of his constitutional protections. These are literally individual capacities. But show us where you have . . . even assuming that you properly raised that in the district court, show us where you've raised that in your opening brief, what we sometimes call the blue brief on appeal. I don't find it. Your Honor, I do not know. I apologize to the court. I don't have a page site for the court. Well, it's not there. We've looked. It's not in your blue brief, so you essentially weigh those issues on appeal. Well, I do believe it's in the reply brief, Your Honor. But that doesn't count. We have a million cases that say you can't raise something for the first time in your reply brief. Sure. And to your point, Judge Smith, it was raised in the reply brief as a response to the claim made by the appellants in their appellate brief. I'm sorry, the appellee is in their appellate brief. But at the end of the day, when we're talking about negligence, the official, you sue the sheriff and the warden in their official capacity. So understandably, we don't have vicarious liability under 1983, but we have vicarious liability in state law negligence. And the way to get to that is to sue the sheriff and the warden both in their official capacities. So I don't have to sue them in their individual capacities for purposes of the negligence claims. The trial court did look at two cases, Meisenheimer and Leonard, when it said that Mr. Powell was not suicidal on the date of March 13th, and so the appellee shouldn't have known that he would take his life. But those are readily distinguishable cases, Your Honors. In both of those cases, you have inmates that commit suicide, their family's claims are due to lack of knowledge on the part of the defendants. And there was a specific finding, however, in those cases, and I believe that this is key, the inmates never displayed signs of suicidal tendencies, they never made statements to anyone that would have indicated an intent to harm themselves, and there was no history of suicidal behavior. So that is readily distinguishable what we're looking at here. Well, are you saying, again, as Judge Smith put it, are you saying that any time a person subject to detention says, I am suicidal, and then it gets cleared by the psychiatrist that notwithstanding that, they breach Louisiana law by not placing him on continuous suicide watch? Judge Jones. There's nothing in the February 18th or even the March 3rd, I think those are the dates, and counters that indicated suicide. It may have indicated mental problems, but unfortunately, a lot of detainees have mental problems. Well, Judge Jones, I respectfully disagree. The February 18th record says he has abrasions on his wrist, he is depressed, he's delusional, and he is, he specifically states that he needs help, and these are under the criteria established by the Washtenaw Correctional Center and the Washtenaw Sheriff's Office, which if you look at the policy, it states that those are drafted with the help of mental health professionals. So suicide was within the contemplation of anybody who is depressed and has abrasions on his wrist and claims that he's been raped? I think it is, they have written... Do you have expert, do you have an expert affidavit to support that? Your Honor, I have an expert affidavit that specifically states given these behaviors, Mr. Powell should have been placed on suicide watch, that that is the best practice. Now, and again, they have the policies crafted, they have to follow their policy, which I don't dispute, and I'll get into the policy in under 1983, but I don't dispute the policy as it's written is sufficient to protect inmates if it's followed, but it wasn't followed. So they ignore their policy, and again, I go back to they ignored medical recommendations, and if the court wants to find that these behaviors are not indicators of suicide, respectfully Judge, I believe that that has to be something that the court sees within an affidavit by a medical expert, and that is simply not in the record. Appellees have not presented this court, and they did not present the trial court with a medical opinion saying despite these behaviors, there was no indication that this inmate would commit suicide, despite the recommendations of the nurse at the jail not being followed, there is no indication and no foreseeability that this inmate would commit suicide, and we don't have that, and I'm not suggesting that this court should make a factual finding at this point that this man was suicidal, but what I'm saying is that is a genuine issue of material fact, and we should have the opportunity to go to trial on that and make that determination. Your Honors, I do briefly want to jump to the custom of the jail. I don't believe the trial court even considered, the trial court said that the written policy known as the suicide prevention and intervention policy was constitutionally sound on its face, and I don't disagree with that, but the trial court did not address was the custom throughout the jail, widely implemented, known as heightened observation, so under 1983, a claim can stem from a custom of the governmental unit. In order to really understand why that's deficient, if we look at the official policies and procedures and we see there's listed seven behaviors that an inmate, if a deputy who, and the deputies pursuant to the policy are supposed to be on constant observation for these seven behaviors, and if they see any one of them, they're supposed to report it to a SHIP supervisor who's supposed to put the inmate on suicide watch, and suicide watch entails placing the inmate in a holding cell, which is a cell safe from materials and tools that he could use to harm himself. It is placing the inmate on the list to be seen by the jail's mental health professional or a medical doctor, it requires constant observation, and it requires that those observations be logged every 15 minutes, so what we know about heightened observation from the records and various depositions, particularly the current warden of the jail, Paul Campbell, is that heightened observation does not require any of those things, so when deputies are looking at an official written formal policy, our argument is that that is constitutionally inadequate. Now the custom I submit to your honors is that it was adopted or maintained with deliberate indifference to known or obvious consequences, that's the standard under 1983. That's met when the prison official knows of and disregards a substantial risk to inmate health, and that knowledge, importantly, there does not have to be an intent to cause harm, or knowledge that harm will result. The knowledge can be demonstrated by circumstantial evidence, so in this case, you've got knowledge of the policymakers, you can infer that from the formal written policy and the language and the instructions therein, so the policymakers have knowledge of what can happen to a suicidal inmate when they're not placed on suicide watch, and we know that by virtue of looking at the written policies and the protections that they have said have to be afforded to be taken, and those measures fail to afford the same measures and protections or equivalent measures and protections than the formal adopted policy, there's knowledge that attaches to the appellees that a custom is inadequate and a substantial risk to inmate health exists. So I'm asking this court to find that there's a genuine issue of material fact that that heightened observation policy, as it was applied to inmates at risk for suicide, did not adequately protect their Eighth Amendment rights, and I see I'm out of time, thank you. Okay, thank you. You have a chance for rebuttal. Mr. Wixom. Good morning, Your Honor. Jason Wixom on behalf of appellees, Sheriff Jay Russell, and former Warden Pat Johnson. May it please the court. Your Honor, we ask you that you uphold the district court's granting of a motion for a variety of different reasons, and the district court had a variety of different routes for which to grant that motion for summary judgment. Judge Smith picked up on one of these aspects earlier. This is an official capacity case only. Now, the appellant can refer to whatever portions of the complaint is most suitable for their argument, but I would ask that you look at the original complaint, pages two and three, record doc 13 to 14, where the sheriff is named in his official capacity only. The court considered this, but I would also ask the court to look at the caption, where the sheriff is only listed as being sued in his official capacity. Now, the appellant amended her complaint, that's record doc 309, and on page eight, it explicitly says the sheriff is being sued in his official capacity, and no portions of the original complaint were incorporated into that amended complaint. Now, Pat Johnson was never identified as being sued in his official or individual capacity, which could be problematic, except for the fact that in their opposition to our motion for judgment in the pleadings, there's an entire section entitled plaintiff does not seek to bring individual capacity claims against either Sheriff Jay Russell or Warden Pat Johnson. That is unambiguously clear, and in the opposition to our motion for summary judgment, the appellant said, wait a minute, nope, didn't mean that, that was an oversight. I was reviewing my brief over the weekend, and there was a page where I said official capacity, where I meant to say individual capacity. That was an oversight. This is not an oversight. This is a reversal of course, or an attempted reversal of course, which the district court rightly did not permit in ruling on its motion for summary judgment. So what are we left with? We're left with improperly pled official capacity claims, and I say they're improperly pled because under Iqbal and Twombly, they were required to identify a policy, procedure, practice, or custom that was deliberately indifferent to the rights of this individual decedent. And they were required to provide something more than an isolated act, and you'll note at no point in time in the pleadings does the appellant refer to any other acts whatsoever. The same holds true with regards to the failure to train or supervise. In their pleadings, they were required to state for the court and for the parties how and in what manner the training or supervision was deficient. Because without that notice, the appellees can't be presumed to know that the training protocol was deficient. Well, this is all very interesting, but she was just making most of her argument based on Louisiana law. And that's fair, Your Honor. And we can refer to that as well under the matter of Scott v. State and Roberts v. Benoit. It's not a deliberate indifference standard, but there is a required ease of association between the suicidal act and knowledge on the part of the appellant. That's sort of what I'm trying to figure out, because if it's an official capacity, does that amount to respondeat superior under Louisiana negligence law or what? None of the facts of this case, and this requires clarification on the decedent's history. They are correct. In November of 2019, the decedent was admitted as an inmate to OCC. He declared that he was suicidal. They put him on suicide watch. In January of 2020, the decedent stated, I am suicidal. And they placed him on suicide watch. On February 18th, he exhibited symptoms of depression and unaccounted for abrasion on his wrist. We don't know where it came from, and there's nothing in the record to suggest that. But he was never denied medical treatment. He saw a doctor on February 18th, and as Dr. Boyle testified, the only person who can remove an inmate from suicide watch is a medical doctor. So a medical doctor saw him, it was Dr. O'Neill, a medical doctor saw him, apparently found him to not be suicidal, cleared him, but then still placed him in a segregated cell for his own safety. He was then released back into general population on, if I recall, February 20th. Everything was okay. On March 3rd, he claims he was raped. A PREA investigation was performed. They reviewed video footage, which showed he was not in fact raped. But most importantly, Amber Boland, the PREA representative, specifically asked the decedent, are you suicidal? And in her report, she writes, he emphatically said no. There was no notice that 10 days later, he was going to commit suicide. And I'd ask the court to look at the matter of Smith v. Blue. It's a 2020 case where a juvenile detainee attempted to commit suicide. This fact was known to the defendant. Nine days later, he successfully committed suicide. And this court held that a nine-day gap between the original attempted act and the successful act was not enough to create a presumption of knowledge on the part of the defendant, even though he already knew that a prior suicide attempt had occurred nine days previously. So what the appellant is asking you to do is to apply a new standard regarding inmate suicidality, which has never been adopted by this court, and you apply some heightened observation policy, custom, or procedure, which has nothing to do with the decedent's purported suicidality. The heightened observation protocol basically asks that deputies take an inmate who is exhibiting some sort of problem and give him a little bit more attention than they would an ordinary inmate. Well, suicide watch is a lot more than a little attention. I mean, they basically take away all your clothes, they give you a, you know, plastic sheet, I mean, you don't have any amenities in your prison cell. I can see an inmate suing for unconstitutional conditions if he was wrongly placed on suicide watch forever. And respectfully, Your Honor, I make that argument in my brief. It is no minor thing to take an inmate, put him in an isolated cell for a minimum, Dr. Boyle testified, of 48 hours in a paper gown without interaction with anybody else and without any personal possessions. But the important thing that I want to point out is that appellant references the seven different factors regarding when a deputy should place an inmate on suicide watch. There is nothing in the record to suggest that on March 13th, 2020, he exhibited any of those behaviors. In fact, we have affidavits from every deputy who worked on his dorm that night. One of them testified he knocked on the door to his cell, the decedent looked at him and smiled. Every one of them said we had no reason to believe he was going to kill himself that night. In fact, they have presented, and by they I mean the appellant, has presented no evidence to contradict that. And what the appellant relies on is some alleged failures on the part of deputies when the decedent was previously placed on suicide watch, and I have to note, did not commit suicide, to perform certain actions like logging every 15 minutes when he was viewed while ignoring the fact that inmates who are suicidal in OCC are under constant observation via video camera. They are never not seen. But that's largely irrelevant for the purposes of this case insofar as March 13th, as the District Court properly picked up on, was the date that he committed suicide. Let me go back to my original question. If this is an official capacity suit only, does Louisiana, how does Louisiana hold that according to the state law of negligence? And I would ask the court to review the Scott case. Scott case. Right. Where there has to be an ease of association between the suicide and the duty aspect. Scott specifically held there's not strict automatic liability because an inmate under the care of a correctional facility commits suicide. There has to be not only a bit of foreseeability, but an ease of association. And here that ease of association was lost. Ease of association, you mean knowledge of some sort, right? Something that there was a threat of it happening or they should have known there was a threat of it happening. Okay. And on the appellant's best day, there is no indication that we had knowledge that he was going to commit suicide, especially when 10 days prior, the deceit was asked when he was exhibiting self-seeking behavior, are you suicidal? No. However, in February 8th, in February of 2020, again, and this point was left out, he was seen by a medical doctor, Dr. Boyle, and oh, let me not mention, not fail to mention this fact. There's been an argument that he was not placed on the list to see Dr. Boyle. That's never been proven. What has been proven is Dr. Boyle testified that there are quote, a myriad of reasons why an inmate might not see me, not least of which the inmate can refuse to be seen by me. There's nothing in the record because it didn't happen that after February 18th, the decedent completed any sick hall requests or requested any medical treatment or made any claims of suicidality. So the question that the court has to consider is why would anyone believe on March 13th, 2020, that Blake Powell posed that risk of harm to himself? The record is silent. Your Honors, with that in mind, if the court were to determine that an individual capacity claim lie here under a failure to train or supervise under the same standard of the official capacity claim, the appellant was forced to show that the policy or supervision was deliberately indifferent to the needs of Blake Powell. They've already conceded that we had a policy in place, but somehow the policy was not followed in a way that has nothing to do with the, uh, with the suicide of Blake Powell. Your Honor, I have no further remarks unless you have some questions. All right, sir. I guess we don't either. Thank you. Thank you very much. Your Honors, I'd like to briefly address the improperly pled argument. The property remedy of the trial court had the court determine, because we did pray for this in our opposition to the motion for summary judgment, that if the trial court deemed some aspect of the pleading was not properly pled, that we'd be permitted an amendment. So that would have been the property, proper remedy, and I'm asking this court if you were to find, as the trial court did, that certain aspects were not properly pled, that the case would be remanded and an opportunity to amend would be allowed. Now, opposing counsel just went through the negligent argument, and they're asking this court to just ignore the fact that they overlooked their own policies and procedures when it comes to the requirements to place an inmate on suicide watch. I do want to address the medical doctor that he said saw Mr. Powell on February 18th of 2020. That medical doctor, if you look at that medical note, it is in the record. He said that Mr. Powell needs to be seen by Dr. Boyle, that he needs to go to a mental health professional, and there's a note in that record about suicide watch. Again, that wasn't done. And they're just asking this court to base its finding on argument, which is what they did at the trial court, to say they're just submitting argument, saying there's no connection. Where's the evidence? Where is the evidence that there's no connection between the February 18th, 2020 behaviors, the March 3rd, 2020 behaviors? And again, I'm citing to the court, there's actual documentation in the record that these behaviors were concerning to nurses and medical staff that he needed mental health care. What do you do with his statement on March 3rd when he said he was not suicidal? Your Honor, I don't, I have not seen in the record where he makes the statement he's not suicidal, but you're looking at delusional behavior. He has to be provided the opportunity to have mental health care, and the nurse, somebody with training in this, spoke to him and said, this man needs to be on suicide watch. That is in his deposition. He said, I recommended him for suicide watch and to be seen by a mental health professional. Now, yes, I don't deny that Mr. Powell has every right, once the medical professional You said a nurse put that in a record, in a document on February 18th, is that what you say? Correct. So he stated in his deposition that he recommended Mr. Powell for suicide watch. But I'm saying he put it in a document. In his document, it says he needs to be seen by a mental health professional. That's different from saying he needs to be placed on suicide watch. Right now I'm asking him about suicide watch, is there a document where he wrote he should be placed on suicide watch in February, February 18th? Judge Graves, there is, you're correct that there is not a document, but his deposition testimony was that he made that recommendation. All right. Yes. So, but they're asking this court without any evidence, again, and I go back to, there's no medical opinion to say that there's no connection between these behaviors for which medical care and mental health care was recommended and his ultimate death. And again, we're talking about, he has the right to refuse mental health care, but Dr. Boyle still has to be placed on a list to be seen by Dr. Boyle and the record establishes that was the deputy's responsibility to do that. And then at that point, Dr. Boyle has to go and see him. Dr. Boyle testified that he had never seen him again. Yeah, but . . . Not that . . . I mean, I'm confused and maybe I read the briefs too long ago, but you were just talking with Judge Graves about the fact that the nurse testified that on February 18th, he verbally recommended suicide watch. I apologize, Judge Jones, if I misspoke. On March 3rd of 2020, he . . . March 3rd, because, of course, he saw Dr. Boyle on the 18th. He did not see Dr. Boyle on the 18th, Judge Jones, he saw a medical doctor, I believe. A medical doctor. Well, medical doctors, I think, are about as aware of the criteria for suicide watch. Sure, and under the policies and procedures, a medical doctor can clear Mr. Powell for suicide watch, but he was not put on suicide watch. I just want to reiterate that to the . . . I understand that. Right. If you look at the housing history and the testimony, everybody says he was placed on heightened observation, which we know doesn't afford the same constitutional protections. At the end of the day, the medical doctor that did see him said he needs a follow-up with Dr. Boyle, is what the notes say. Are you saying this is . . . is that material to a state law claim or a federal constitutional claim or both? I certainly think it is material to the negligence claims. I don't know how you get around foreseeability without a medical expert coming in and saying that there's no connectivity between these prior suicide indicators and behaviors for which no mental health care was rendered and his ultimate death less than two weeks from the last instance. One more question. What is your . . . I might have asked you this before, but I didn't make a note. What's your best case in Louisiana law for finding negligence against these two officials? Your Honor, I do believe that Jacobs parallels the case. I also believe that the Nagel Court, that's Eastern District, but it discusses Louisiana negligence. Which is the second one? Nagel, N-A-G-L-E. Nagel. Okay. The facts aren't exactly parallel there, but it discusses the ease of association and how it's important for a state law claim. You've got the duty and the knowledge of the risk, and when you couple that and the history, the history is what's important. They say that that history is certainly important for purposes of ease of association. Thank you. All right. Thanks very much. We are in recess until 9 o'clock.